THOMAS A. COBB *vs.* SAM'L M. JAMESON & others.

April Term, 1874.

ACCOUNT—MODE OF PROCEEDING IN CASES OF.—The only correct mode of proceeding in cases in which an account must be taken between the parties, is to first prepare the case for hearing, and have the legal rights of the parties determined, and the principles of the reference settled, upon which the master should·act in taking the account.

SAME—DUTY OF COURT AND CLERK.—In matters of account, it is the exclusive duty of the court to adjudge rights, while the duty of the clerk is principally ministerial and to ascertain facts, and scrutinize details, and these duties are confounded whenever a general reference is made without the preliminary hearing on the merits.

ACCOUNT UNDER A CONTRACT FOR THE ERECTION OF A HOUSE.—General form of a decree of reference upon a bill by a mechanic for an account under a building contract, and a cross-bill of the employer for damages by way of recoupment.

*M. C. Goodlett*, for complainant.
*G. J. Stubblefield*, for defendant.

THE CHANCELLOR :—On the 20th day of May, 1872, the complainant, and defendant, Jameson, entered into a contract in writing, by which the former agreed " to do and perform all the work of every kind mentioned and contained in the foregoing specifications, which are hereby made a part of this contract, and according and subject to the conditions above recited, and according to the drawings prepared and referred to," for the sum of $3,400, which the said Jameson bound himself to make in separate payments as follows :

First payment when 2d-story floor joist are placed on the walls.

Second payment when enclosed and slated.

Third payment when plastered.

Fourth payment on the 1st of November, 1872.

" The building to be completed on or before the 1st of October, 1872."

The specifiations were for a brick dwelling house to be erected in Edgefield, and were drawn up with great particularity by the architects. The conditions appended to these

specifications, and which were also signed by the parties, were as follows :

" The contractor shall and will, at his own cost and charges, find, provide, and deliver all and every kind of new material of the best quality and description ; together with the goods and chattels, cartage, scaffolding, tools, &c., which may be necessary for the due, proper and complete execution, and accordingly erect, build, execute, perform, finish and complete in the best workmanlike manner, to the perfect satisfaction and approbation of the architect, agreeably and conformably in all and every respect to the specifications, drawings, dimensions and explanations and observations therein or herein stated, described or implied, and all things incident thereto which may become necessary according to the true intent and meaning thereof, although not specifically stated or described by, but which may be inferred from the above said drawings and specifications, the same generally to illustrate each other. The architect to be at liberty to make any deviation from, or alteration in the plans, form, construction, details and execution described by the drawings and specifications, without invalidating or rendering void the contract ; and in, case of any difference in the expense, an addition to or abatement from the said contract amount shall be made in the ratio or proportion such work may bear to the whole contract work agreed to be performed, and the same to be determined by the architect ; but no extra or addition to be admitted or allowed unless executed under written authority from the owner. The architect's opinions, certificate, report, and decision on all matters to be binding and conclusive."

The work was commenced shortly after the contract was executed, but the building was not completed by the time designated in the contract. By the contract, also, the contractor was to provide and deliver, at his own .proper cost and expense, every thing necessary to carry on the work. But he admits in his deposition, that he had little or no means, and the proof abundantly shows that

from the first he was compelled to draw upon the defendant for money with which to pay for labor or material, or to meet necessary expenses. The plan adopted was for the complainant to draw upon the defendant in favor of his workmen or employees, which orders the defendant paid and subsequently delivered up to the complainant when the latter delivered to the former the certificate of the architect's showing that he was entitled to payment under the contract. On the 8th of July, 1872, the architect gave the complainant his first certificate for $400, which seems to have been at once taken up by the defendant. On the 5th of September, 1872, he gave him a second certificate for $2,200, the full amount of which is receipted for, on the back of the certificate, under the date of September 6, 1872. There is some dispute as to whether the receipt was given on that day, or afterwards and antedated, but none that it was executed. A third certificate was given on the 9th of October, 1872, for $850, stating on its face that it is for "the third instalment" under the contract. These three certificates more than cover the entire consideration agreed to be paid by $50. This sum being added, with Jameson's consent, to cover any changes in the work. The final estimate or certificate, which, as the architect says in his deposition, " constitutes the approval " of the work, was never given.

The building was not completed until in the month of November or December, and the defendant paid for the work and material necessary for its completion. The workmen seem to have been employed, in most if not all instances, by the complainant, but the defendant was compelled to promise to pay them, before they would do the work.

After the defendant had gone into possession and occupation of the building, an effort was made between him and the complainant, in the presence of the architect, to come to a settlement, but it failed, and thereupon the complainant filed his original bill claiming a large balance as still due him on the contract and for extra work, and claiming a mechanic's lien. The defendant answered, and filed a cross-

bill for counter relief, insisting that he had paid orders of the complainant to the full amount due, and incurred expenses necessary to the completion of the building according to contract, and sustained damage by reason of the failure of the complainant to do and complete his work according to contract. The defendant also stated that he had become liable for the complainant by staying a judgment against him which he had been compelled to pay. Proof was taken on both sides, and an order made by consent referring it to the master to take a general account, and his report is before me on exceptions.

I have had occasion heretofore to call the attention of the bar to an erroneous practice in this court, the evils of which are strikingly exemplified in this case. Instead of taking proof with a view to a determination of the rights of the parties, and the settlement of the principles upon which the account between them should be taken as a preliminary to the actual taking of the account, the learned counsel have inadvertently agreed upon a general reference settling nothing. The consequence is that both the Clerk and Master and the Chancellor are compelled, if they act at all, to depart from their proper functions and perform, to some extent, the duties of each other. Their provinces, in this state, are, to a great extent, separate and distinct. It is the duty of the judge to adjudicate rights and settle principles. It is the duty of the master to inquire into and report upon facts. His duty is inquisitorial not judicial. *Evans* v. *Evans*, 2 Cold. 152. If you make a general reference to him, without first settling the rights of the parties and giving him special directions, he must himself judicially determine these rights before he can take any account at all. If he determines them wrong, the whole labor of taking the account is thrown away. Moreover, no matter what report he makes, the Chancellor must, in acting upon exceptions, not only look to the facts bearing upon each exception, but settle the law which regulates the rights of the parties. If he fails to do this, an account is taken without any adjudication of rights at all.

In this case the original complainant was demanding a settlement upon the ground of the fulfillment of a contract. The defendant was insisting by cross-bill upon damages for a failure to comply with the contract. Of course, no account could be satisfactorily taken until it was first determined whether there had been a fulfillment or breach of contract. The parties, without any hearing or adjudication, agree to a reference " to take an account of all the dealings and transactions between the complainant and defendant, and to report the balance." Nothing could possibly be more general, or more unsatisfactory. The Clerk and Master, in executing this reference, has chosen, and, I think, properly, to construe the words of the order literally, and to report upon nothing but " dealings and transactions " between the parties, that is, orders made by the one and payments made by the other. He has entirely ignored the rights of the defendant, if he has any, to damages for a failure to comply with the contract; nor could he notice such rights without usurping the province of the Chancellor, and deciding that the defendant had such rights. But an account so taken is clearly one-sided. The defendant seeks to rectify the defect by filing exceptions specifying damages, and claiming damages. The court may very properly determine the question whether he is, or is not entitled to damages. If the Chancellor goes a step further, as required by the exceptions, and determines the amount of damages, he is, in turn, performing the duties of the Master. The parties are entitled to the judgment of the court upon the right to damages, and to the judgment of the Master, upon a reference, as to the extent of the damage. If I undertake now, to fix the items of damage, the parties will never have had the benefit of the Master's scrutiny upon the questions of fact involved; for the Master, in this case, has refused to investigate these facts. The only correct mode of proceeding is to have the legal rights of the parties first adjudged, and upon such adjudication a reference to the Master, whose duty it will then be carefully to sift the facts. His conclusions, upon these facts,

may be revised by the Chancellor, upon proper exceptions, but it is obvious that the parties have had the benefit of the double investigation. By the plan adopted in this case, the parties have lost the benefit of the Master's judgment, and have not the full benefit of the Chancellor's judgment upon the facts alone, for he has the onerous duty, at the same time, of deciding the law.

In this case, it is very clear that there has been a breach of contract by the complainant in not completing the building in the time stipulated, and in failing to "find, provide, and deliver all and every kind of material" necessary to the erection of the building, and to "erect, build, execute, perform, finish, and complete" said building, "at his own cost and charges." The proof leaves no doubt that the material was supplied and the work done at the cost and charges of the defendant, and that his expenditures largely exceeded the contract price. The defendant is entitled to be credited with the two sums of $400 and $2,200 shown to have been paid by him to the complainant or on his orders, and with such further sums of money as he may show that he has paid to the complainant, or for him, or upon his order, and with such sums of money as he may have been compelled to pay for work, labor and materials necessary to the completion of the building according to contract. He is also entitled to recoup the complainant's demand by any damages he may have sustained by reason of the complainant's failure to do any part of the work according to contract, or to complete the building by the 1st of October, 1872, as stipulated. The proof fails to show that the delay in completing was in any respect the fault of the defendant, but the burden will be upon him to show actual damage by the delay.

The complainant is entitled to the price agreed upon by his contract, less $235 which, he admits, he agreed with the defendant to deduct for plastering paid for by the latter. He will also be entitled to the $50 admitted to be due for extra work, but to no other extra work "unless executed

39

under written authority" from the defendant. If, however, he can show a special contract with the defendant, even by parol for work not within the contract, he will be allowed the same under such special contract, but not under the original contract. He is also entitled to any difference in expense over contract price occasioned by any deviation from or alteration in the plans, etc., made by the architect as provided in the contract, in the ratio of such work to the whole work.

The rights of the parties will be declared by decree in accordance with this opinion. If either party desires that the matters of account shall be again referred to the Master, with directions to take and report the same in accordance with the principles adjudged, the report already made will be set aside and the reference ordered. If the parties prefer, however, that I should finally determine their rights upon the report and exceptions already made and filed, I will act upon them.